UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAMIRO TRUJILLO HERNANDEZ,

Petitioner,

v.

WARDEN OF THE GOLDEN STATE ANNEX ICE DETENTION FACILITY, et al.,

Respondents.

No.  1:25-cv-01711 WBS SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee proceeding through appointed counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241.  This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

I.      **Factual and Procedural History**

Petitioner, a Mexican national, is currently detained in the Golden State Annex Detention Facility within this judicial district.  ECF No. 1 at 5.  Petitioner was admitted to the United States as a lawful permanent resident on April 25, 1988.  Declaration of Deportation Officer A. Parra Jaimes ("Parra Jaimes Decl."), Exh. 2, ECF No. 14-2 at 9.  On August 31, 2007, petitioner was convicted in the Superior Court of California, San Bernardino County, of attempted murder in violation of Cal. Penal Code §§ 664/187.  Id., Exh. 3, ECF No. 14-2 at 14-30.  The Superior Court sentenced petitioner to 27 years in prison.  Id. at 17-20.

1

Petitioner was paroled from state prison on May 20, 2025. ECF No. 1 at 5, ¶ 23. That same day, Immigration and Customs Enforcement ("ICE") took petitioner into custody and administratively charged him as subject to removal pursuant to INA § 237(a)(2)(A)(iii) [8 U.S.C. § 1227(a)(2)(A)(iii)] for having been convicted of aggravated felonies as defined by INA §§ 101(a)(43)(F) and (U) [8 U.S.C. §§ 1101(a)(43)(F) and (U)]. Id.; Parra Jaimes Decl., Exh. 1, ECF No. 14-2 at 5. Petitioner remains detained at the Golden State Annex. ECF No. 1.

Initially proceeding pro se, petitioner filed the instant § 2241 petition on December 2, 2025. ECF No. 1. Petitioner argued that his detention (of more than six months at that time) without a bond hearing violated the Due Process Clause of the Fifth Amendment. Id. at 1, 16-17. Petitioner also stated that he is pursuing cancellation of removal and has filed a motion to vacate his conviction. Id. at 5. He requested that the Court issue a writ of habeas corpus and order his immediate release. Id. at 17. In the alternative, petitioner asks the Court to order his release within 30 days unless respondents schedule a hearing before an immigration judge ("IJ") during which the government must establish, by clear and convincing evidence, that he presents a risk of flight or danger. Id. The undersigned appointed counsel on December 11, 2025. ECF No. 5.

Respondents filed a return to the petition, requesting that it be denied. Respondents assert petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) based on having committed offenses covered by 8 U.S.C. § 1227(a)(2)(A)(iii). ECF No. 14 at 4. Respondents further argue that § 1226(c) provides no statutory right to a bond hearing, and any facial challenge to the constitutionality of § 1226(c) is foreclosed by Demore v. Kim, 538 U.S. 515 (2003) and Jennings v. Rodriguez, 583 U.S. 281 (2018). Id. 4-5. Respondents also maintain that an as-applied challenge to petitioner's mandatory detention fails because petitioner did not acquire a protected liberty interest upon his release from state prison, and his detention is not unreasonably prolonged. Id. at 8-10. Regarding the latter point, respondents submit evidence that since May 2025, petitioner has requested and received five continuances of his merits hearing, which was scheduled for April 22, 2026, at the time they filed their return. Parra Jaimes Decl., ¶¶ 10-11, 14, 16-18, 20, ECF No. 14-2 at 3-5. Per petitioner's EOIR Case Information webpage, that hearing is

2

now scheduled for May 11, 2026.[1]  See https://acis.eoir.justice.gov/en/caseInformation.

In the counseled traverse, petitioner does not dispute that "§ 1226(c) authorizes his initial detention upon release from criminal custody" but maintains the Due Process Clause requires individualized review now that his prolonged detention has far exceeded the brief period contemplated in Demore.  ECF No. 17 at 2-3.  For support, petitioner points to the absence of a bond hearing to date as well as the fact of the "early procedural posture" of his removal proceedings.  Id. at 3.  Regarding respondents' argument that petitioner prolonged his own detention, petitioner counters that he requested continuances to obtain counsel and prepare his case—rights that are "fundamental to removal proceedings."  Id.  Moreover, petitioner argues the IJ granted the continuances over DHS objection in some instances.  Id. at 4.[2]

**II.	As-Applied Framework**

The parties agree that petitioner remains subject to mandatory detention under 8 U.S.C. § 1226(c).  That provision states that the Attorney General "shall take into custody any [noncitizen] who" falls into one of the enumerated categories involving criminal offenses.  8 U.S.C. § 1226(c)(1)(A)-(E).  Based on his administrative charge, petitioner's detention appears to fall under § 1226(c)(1)(B), which requires the Attorney General to take into custody noncitizens like petitioner who have committed an "aggravated felony" offense covered in § 1227(a)(2)(A)(iii).  8 U.S.C. § 1226(c)(1)(B).

The petition raises an as-applied, procedural due process challenge to the constitutionality of petitioner's prolonged, mandatory detention without a bond hearing.  See ECF No. 1 at 10-13 (addressing procedural due process test from Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).  An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others."  Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).  ICE has

---

[1]  The undersigned takes judicial notice of petitioner's EOIR case information.  See Fed. R. Evid. 201(b)-(c) (a court "may take judicial notice on its own" of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[2]  On the same day appointed counsel filed the traverse, petitioner filed a pro se motion for temporary restraining order ("TRO").  ECF No. 15.  Petitioner, through counsel, subsequently filed a notice withdrawing the TRO motion.  ECF No. 18.

3

detained petitioner since May 20, 2025 – for nearly ten months.  ECF No. 1 at 5, ¶ 19.  Petitioner alleges, and respondents do not dispute, that petitioner has never received a bond hearing to determine whether his detention is justified based on danger or flight risk.  Id., ¶¶ 2-3; ECF No. 14 at 3.

As respondents note, the Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c) in Demore, 538 U.S. at 531.[3]  ECF No. 14 at 5.  The Supreme Court did so with the understanding that § 1226(c) detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal."  Demore, 538 U.S. at 513, 529 n.12, 530.  Justice Kennedy joined the opinion in full, but wrote a concurring opinion recognizing the viability of as-applied challenges under the majority's framework: "[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident [noncitizen] . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."  Id. at 532 (Kennedy, J., concurring).  Later, in Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court recognized the right to bring such as-applied challenges: "Our decision today on the meaning of that statutory provision [8 U.S.C. § 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it."  Preap, 586 U.S. at 420.

While observing that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)," the Ninth Circuit has expressly declined to address "[w]hether due process requires a bond hearing" in such situations.  Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022), cert. granted, judgment vacated, 144 S. Ct. 1339 (2024).  Indeed, "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings,

---

[3]  Respondents also emphasize that the Supreme Court in Jennings rejected the Ninth Circuit's prior interpretation in Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), that 8 U.S.C. §§ 1225(b)(1) and 1226(c) include "an implicit 6–month time limit on the length of mandatory detention."  Jennings, 583 U.S. at 292–94, 298.  Pursuant to Demore and Jennings, the undersigned rejects the petition's alternative argument that petitioner's detention is per se unconstitutional because it has reached six months.  See ECF No. 1 at 8-9.

4

without a bond hearing, will—at some point—violate the right to due process." Lopez v. Garland, 631 F. Supp. 3d 870, 877 (E.D. Cal. 2022) (quotation omitted); see also Doe v. Becerra, 732 F. Supp. 3d 1071, 1079 (N.D. Cal. 2024) ("[D]ue process protections do not disappear simply because mandatory detention under Section 1226(c) is at least initially permissible.").  In other words, the Supreme Court's "conclusion [in Demore] that § 1226(c) is constitutional in some of its applications does not mean that the Court 'does not have the power to grant petitions for habeas corpus raising *as-applied* constitutional challenges to [ ] detention without a bond hearing.'"  Carballo v. Andrews, No. 1:25-cv-0978 KES EPG (HC), 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025) (quoting Perera v. Jennings, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022)) (emphasis in original).

Other Circuit Courts of Appeal have also concluded that Demore does not foreclose as-applied challenges to prolonged detention under § 1226(c).  See German Santos v. Warden Pike Correctional Facility, 965 F.3d 203 (3d Cir. 2020); Reid v. Donelan, 17 F.4th 1 (1st Cir. 2021).  Most recently, the Second Circuit held that "[t]he Constitution does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under section 1226(c) without a bond hearing; at some point, additional procedural protections—like a bond hearing—become necessary."  Black v. Decker, 103 F.4th 133, 145 (2d Cir. 2024).  The undersigned finds these authorities persuasive and agrees that Demore does not bar an as-applied challenge to his prolonged detention without a hearing.  Accordingly, the undersigned will proceed to the procedural due process analysis.

### III.    Legal Standard

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V  The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001).  Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause.  The second step examines the procedures necessary to

ensure any deprivation of that protected liberty interest accords with the Constitution.  See

Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer,

408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains

what process is due.").

To determine what process is due here, petitioner urges the Court to apply the test from

Mathews, 424 U.S. 319, or the multi-factor reasonableness test the Third Circuit adopted in

German Santos, 965 F.3d 203.[4]  ECF No. 1 at 9.  Respondents address the Mathews factors in

their return but argue that the application of those factors "in the context of mandatory detention

under Section 1226(c) is unsupported by Supreme Court authority."  ECF No. 14 at 7 (citing,

inter alia, Dusenbery v. United States, 534 U.S. 161, 168 (2002) ("[W]e have never viewed

Mathews as announcing an all-embracing test for deciding due process claims.")).  Instead,

respondents ask the Court to follow Keo v. Warden of the Mesa Verde ICE Processing Center,

No. 1:24-cv-0919 HBK (HC), 2025 WL 1029392 (E.D. Cal., Apr. 7, 2025), where a fellow judge

of this District declined to apply any of the "myriad of overlapping balancing tests" used by

district courts within the Ninth Circuit and instead held the "threshold question in considering

Petitioner's claims of unreasonably prolonged detention under § 1226(c) without a bond hearing

is whether Petitioner's continued detention serves the purported immigration purpose and has a

definite termination point[.]"  Keo, 2025 WL 1029392, at *5, *7.  Respondents also point the

Court to Banyee v. Garland, 115 F.4th 928 (8th Cir. 2024), where the Eighth Circuit interpreted

Demore as adopting a "bright-line rule" that "the government can detain an alien for as long as

deportation proceedings are still '*pending*.'"  Banyee, 115 F.4th at 933 (emphasis in original).

The undersigned has considered the parties' arguments and finds that Mathews provides

the appropriate framework for due process challenges to prolonged detention under § 1226(c).

See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) ("Mathews remains a

---

[4]  In German Santos, the Third Circuit declined to adopt a presumption of reasonableness or unreasonableness of any duration and instead evaluated duration along with three other factors: (1) whether the detention is likely to continue; (2) the reasons for the delay, such as a detainee's request for continuances; and (3) whether the noncitizen's conditions of confinement are "meaningfully different[ ]" from criminal punishment.  965 F.3d at 211.

flexible test that can and must account for the heightened governmental interest in the immigration detention context.").  The undersigned is particularly persuaded by the Second Circuit's reasoning in Black, 103 F.4th at 145-49, that the Mathews test is flexible enough to account for the additional factors identified by the Third Circuit in German Santos and district courts when deciding whether detention under § 1226(c) has become unreasonably prolonged. The undersigned declines to adopt Keo or Banyee, which are inconsistent with the majority view described above that detention pending removal proceedings and without a detention hearing may become unconstitutionally prolonged.  See Lopez, 631 F. Supp. 3d at 877; Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir. 2005) (observing that it is "constitutionally doubtful that Congress may authorize imprisonment of this duration" where petitioner was detained under § 1226(c) for two years and eighth months pending removal proceedings); Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) (expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional").

The undersigned is also aware of the test developed by the assigned district judge in Uulu v. Warden, No. 1:25-cv-1812 WBS CKD, --- F. Supp. 3d ----, 2026 WL 412204, at *7 (E.D. Cal. Feb. 13, 2026), a case involving a noncitizen's challenge to prolonged mandatory detention under § 1225(b):

> [T]o determine if a petitioner's detention appears to be indefinite, courts look to whether: (1) the petitioner's immigration proceedings have been infected with "bad faith or undue delay by the agency," (2) the petitioner's detention is "directly associated with a judicial review process that has a definite and evidently impending termination point," and is thus "akin to detention during the administrative review process [that] was upheld [by the Supreme Court] in [Demore] (3) there is "evidence that [the petitioner] is unremovable because the destination country will not accept him or his removal is barred by our own laws . . ..

Uulu, 2026 WL 412204, at *7 (internal quotations and citations omitted).  The undersigned respectfully declines to adopt this test.  The Ninth Circuit has recognized that "'indefinite and potentially permanent' civil detention . . . clearly pose[s] serious substantive due process concerns."  Prieto-Romero v. Clark, 534 F.3d 1053, 1064 (9th Cir. 2008) (citing Zadvydas, 533 U.S. at 696); see also Martinez v. Larose, 968 F.3d 555, 564-66 (6th Cir. 2020) (rejecting substantive due process challenge to allegedly indefinite detention under § 1231, which applies to

7

final orders of removal, where petitioner's removal was reasonably foreseeable).  The question presented here is not whether petitioner's detention "appears to be indefinite," but whether his prolonged, mandatory detention without bond violates *procedural* due process.  Courts entertain such as-applied, procedural due process claims despite the Supreme Court's finding in Demore, 538 U.S. at 529, that § 1226 detention has a "definite termination point."  See Black, 103 F.4th at 149 ("Demore upheld the government's authority under section 1226(c) to detain noncitizens without an initial bond hearing for the brief period necessary for their removal proceedings.  It said nothing about whether due process may *eventually* require a hearing.") (internal quotations and citations omitted).  While prolonged *and* indefinite detention is necessary to show entitlement to outright release under the Zadvydas framework, prolonged detention—even if not indefinite— may be sufficient to require a detention hearing.

Accordingly, the undersigned will apply the Mathews framework to petitioner's claim. Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

### IV.  Analysis

#### A.  Petitioner Has a Liberty Interest in Freedom from Prolonged Detention

Before addressing the Mathews factors in their return, respondents raise the alternative argument that petitioner lacks a protected liberty interest because he "transferred to ICE custody on the same day his criminal incarceration ended."  ECF No. 14 at 10.  Respondents rely on the following excerpt from Carballo, 2025 WL 2381464, for support:

> There is also a meaningful distinction between a challenge to an initial period of detention, at issue in *Demore*, and a challenge to *re-detention* after a court has previously granted release on bond pending immigration proceedings. "[T]he liberty interests of [an individual] who is re-arrested differ from the liberty interests of a detained person." *Guillermo M.R. v. Kaiser*, No. 25-cv-05436-RFL, 2025 WL 1810076, at *1 (N.D. Cal. June 30, 2025). In the former situation, where ICE detains an individual upon their release from a correctional facility, without any substantial intervening period of release, that individual has no opportunity "to form the [ ] enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). In contrast, a person who has been released from physical restraint gains a "liberty [interest that] is valuable and must be seen

8

as within the protection of the" Due Process Clause. *Id.*

Carballo, 2025 WL 2381464, at *4.  Petitioner counters that the fact he was "transferred directly from criminal custody to ICE detention does not eliminate constitutional limits on the duration of civil confinement."  ECF No. 17 at 3.

The undersigned agrees with petitioner.  Carballo is factually distinguishable in that "the petitioner's challenge [wa]s based not on the present length of his re-detention, but rather, on the fact that he was previously ordered released and was then re-detained five years later with insufficient process."  Carballo, 2025 WL 2381464, at *7.  By contrast, petitioner here plainly raises a due process challenge to his "prolonged detention without a hearing on danger or flight risk[.]" ECF No. 1, ¶ 3.  Thus, while Demore forecloses a due process challenge to petitioner's "initial period of detention," Carballo, 2025 WL 2381464, at *4, petitioner has a separate liberty interest in "'freedom from *prolonged* detention' [that] is 'unquestionably substantial.'" Rodriguez Diaz, 53 F.4th at 1207 (quoting Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011) (emphasis added)); see also Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or other forms of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects.").  Accordingly, the undersigned finds that petitioner has a protected liberty interest in freedom from prolonged civil detention and will proceed to the Mathews analysis to determine whether procedural due process warrants a bond hearing.

### B.  Mathews Analysis

Private Interest:  Petitioner again has a "substantial" private interest in freedom from prolonged detention.  Rodriguez Diaz, 53 F.4th at 1207.  Courts have generally declined to adopt a specific threshold for when detention under § 1226(c) becomes prolonged.  See, e.g., German Santos, 965 F.3d at 211; Black, 103 F.4th at 150; Reid v. Donelan, 17 F.4th at 7–9.  While the Ninth Circuit has not addressed this question, it has observed that it "previously referred to detentions longer than six months as 'prolonged' . . . in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them."  Rodriguez Diaz, 53 F.4th at 1207 (citations omitted).  Because petitioner's

mandatory detention has reached nearly ten months at this point, the undersigned finds that the duration of his duration, by itself, favors additional procedural protections.  See Cabral v. Decker, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (noting that petitioner's nine-month detention under § 1226(c) was "within the range . . . sufficient to show a due process violation."); Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are imminent").

But "under the first prong of the Mathews analysis, we cannot simply count his months of detention and leave it at that." Rodriguez Diaz, 53 F.4th at 1208.  Courts must consider other factors, including whether the petitioner's "detention was prolonged due to his decision to challenge his removal order." Id.  Respondents' core argument is that petitioner's detention is not "unreasonably prolonged" because he has sought and received continuances that have extended his detention.  ECF No. 14 at 9-10.  Respondents acknowledge petitioner is "within his rights to request time to seek counsel and to prepare his case," but argue the delays resulting from his requests for repeated continuances "cut against [his] argument that his detention has become unreasonably prolonged." Id.

Of the eleven continuances of petitioner's removal proceedings, it appears that seven were the result of petitioner's requests as he sought counsel and prepared to file a request for relief and four were the result of the IJ initiating continuances.  Parra Jaimes Decl., ECF No. 14-1 at 3-5. While courts must be sensitive to "dilatory tactics" by noncitizens seeking to put off their deportation,

> appeals and petitions for relief are to be expected as a natural part of the process. A [noncitizen] who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although a [noncitizen] may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that a [noncitizen] has sought relief from deportation does not authorize the INS to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.

Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003), abrogated on other grounds by Jennings, 583 U.S. 281; see also German Santos, 965 F.3d at 211 ("[W]e do not hold a [noncitizen's] good-faith

challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceeding.").

In an apparent suggestion of delay tactics, respondents repeatedly point out that no counsel has appeared on petitioner's behalf despite his assurances to the immigration court.  Parra Jaimes Decl., ¶¶ 14, 16-17.  The undersigned will not infer bad faith simply because petitioner— an individual proceeding in forma pauperis and who recently completed a lengthy prison sentence—has not yet obtained counsel.  "The duration and frequency of these requests do not diminish his significant liberty interest in his release or his irreparable injury of continued detention without a bond hearing."  Hernandez Gomez v. Becerra, No. 23-CV-01330-WHO, 2023 WL 2802230, at *4 (N.D. Cal. Apr. 4, 2023); see also Lopez, 631 F. Supp. 3d at 881-82 (finding four-month delay proceedings to adjudicate petitioner's Form I-130 a "neutral" factor in due process analysis).  Accordingly, the first Mathews factor favors petitioner.

Risk of Erroneous Deprivation: The second Mathews factor is "the risk of an erroneous deprivation of [petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."  Mathews, 424 U.S. at 335.  This factor favors petitioner.  It is undisputed that petitioner has not received a bonding hearing at any point, and "[i]n the absence of any meaningful initial procedural safeguards, it appears to us that almost *any* additional procedural safeguards at some point in the detention would add value."  Black, 103 F.4th at 153 (emphasis in original); see also Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding "high" risk of an erroneous deprivation where petitioner had not received any bond or custody redetermination hearing during his one-year detention under § 1226(c)).

Respondents argue that this factor favors them given petitioner's merits hearing is scheduled to take place in a few months, marking a "definite termination point for Petitioner's detention."  ECF No. 14 at 11.  But the "definite termination point" language in Demore was premised on the understanding that even cases involving appeals resolve in about five months. Demore, 538 U.S. at 530.  Even assuming the May 11, 2026, hearing resolves petitioner's applications, he likely "faces an undetermined, but likely significant, period of mandatory

detention through the appeals process." Gao v. LaRose, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025); see also German Santos, 965 F.3d at 212 (noting that an appeal of a cancellation of removal order with the BIA "could take months" and potential review in the Court of Appeal "would add months more in prison" such that "the likelihood that [petitioner's] detention will continue strongly supports a finding of unreasonableness"). Accordingly, the second factor favors petitioner.

Government Interest: Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. Respondents argue this factor tilts in their favor based on the government's interests in (1) "preventing aliens from 'remain[ing] in the United States in violation of our law'"; and (2) "seek[ing] to 'increas[e] the chance that, if ordered removed, the aliens will be successfully removed.'" ECF No. 14 at 11 (quoting Rodriguez Diaz, 53 F.4th at 1208). "[T]he additional procedural safeguards we would allow here under Mathews do nothing to undercut those interests. At any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community, as IJs routinely do for other noncitizen detainees." Black, 103 F.4th at 153–54; see also Jimenez, 2020 WL 510347, at *3 ("Providing a bond hearing would not undercut the government's asserted interest in effecting removal. After all, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community.") (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)). Thus, in petitioner's case, the government's interest in further detaining him without a hearing to determine whether such detention is justified is minimal.

Administrative burden is a legally cognizable interest under Mathews. But respondents' interest is further diminished by the low fiscal and administrative burdens associated with a bond hearing. See Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The effort and cost required to provide Petitioner with procedural safeguards is minimal[.]"). Accordingly, the final factor favors petitioner.

////

### C. Remedy

The undersigned finds that the <u>Mathews</u> factors all tilt toward petitioner. Accordingly, the undersigned recommends that the petition be granted and petitioner receive a bond hearing before a neutral adjudicator at which the government bears the burden of showing by clear and convincing evidence that he is either a flight risk or a threat to safety to justify his continued detention. See <u>Black</u>, 103 F.4th at 157 ("[O]nce detention under section 1226(c) has become so prolonged that due process warrants a bond hearing . . . the government must justify continued detention at such a hearing . . .by clear and convincing evidence.").

### CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1.       Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.       Respondents be ordered to provide Petitioner with a bond hearing before an immigration judge at which the government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence, within fourteen (14) days of issuance of the order.

3.       Respondent be further directed to file a notice certifying compliance with the above provision within seven (7) days from the date of the bond hearing.

4.       If petitioner is granted release on bond, respondents be ordered to return all of petitioner's documents and possessions at the time of release.

5.       Petitioner's motion for temporary restraining order (ECF No. 15) be denied as moot.

6.       Judgement be entered in petitioner's favor and this case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See <u>United States v.</u>

13

Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 15, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE